UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALLAH MCCALL,                          :
                                       :
                  Petitioner,          :
                                       :        **DECISION AND ORDER**
        -against-                      :        12-CV-6144 (WFK)
                                       :
SUPERINTENDENT MICHAEL CAPRA,          :
                                       :
                  Respondent.          :
------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

Before the Court is a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 by *pro se* Petitioner Allah McCall ("Petitioner"). Petitioner seeks federal habeas relief based on six claims: (1) violation of his right to be free from unreasonable search and seizure; (2) a *Batson* violation; (3) violation of his right to present a defense at trial; (4) Violation of his right to confront witnesses against him; (5) violation of his due process rights by the prosecutor during summation; and (6) violation of his right to effective assistance of counsel. Dkt. 1 ("Petition") at 5, 7, 10, 12, 14, 17; Dkt. 17 ("Supp."). For the reasons discussed below, Petitioner's claims are meritless. Accordingly, the petition for the writ of *habeas corpus* is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

### Arrest and Conviction

On January 3, 2007, Petitioner was arrested by New York City Police ("NYPD") officers. Dkt. 14 ("Opp. to Petition") at ¶ 4. The NYPD officers received an anonymous 911 call stating a black man wearing a black hat and a jacket with the words "CRIMSON" in red lettering had a gun on the corner of Gateway Avenue and Mott Avenue in Queens County. *Id.* While the NYPD officers were patrolling the area, they spotted Petitioner and Ricardo Gentiles ("Gentiles") walking out of a building. *Id.* The NYPD officers stated Petitioner was wearing a black do-rag and a jacket with the words "CRIMSON" in red lettering on the back. *Id.* The NYPD officers also observed Petitioner adjust his waistband. *Id.* The NYPD officers thereafter arrested Petitioner and Gentiles and recovered a gun from Petitioner's waistband. *Id.* Petitioner

1

was arrested and charged with Criminal Possession of a Weapon in the Second Degree in violation of N.Y. Penal Law § 265.03[1], Criminal Possession of a Weapon in the Third Degree in violation of N.Y. Penal Law § 265.02[1], Criminal Possession of Stolen Property in the Fourth Degree in violation of N.Y. Penal Law § 165.45[4], and Resisting Arrest in violation of N.Y. Penal Law § 205.30. *Id.* at ¶ 6.

Following extensive plea negotiations between Petitioner's trial counsel ("Defense Counsel") and the assigned prosecutor, Petitioner was indicted in late August 2007 on four counts: (1) Criminal Possession of a Weapon in the Second Degree in violation of N.Y. Penal Law § 265.03[1][B], (2) Criminal Possession of a Weapon in the Second Degree in violation of N.Y. Penal Law § 265.03[3], (3) Criminal Possession of a Weapon in the Third Degree in violation of N.Y. Penal Law § 265.02[1], and (4) Resisting Arrest in violation of N.Y. Penal Law § 205.30. *Id.* at ¶ 8-13.

Petitioner then moved to suppress the gun as evidence. *Id.* at ¶¶14-15. On August 4, 2008, the Honorable Michael Aloise of Queen's County Supreme Court denied Petitioner's motion to suppress. *Id.* at ¶ 16. Justice Aloise found the officers were justified in searching Petitioner given Petitioner matched the description of the 911 call of a man with a gun and engaged in suspicious activity by adjusting his waistband. *Id.*

Petitioner then proceeded to trial. *Id.* at ¶ 17; *see also* Dkt. 10 ("Tr. I") at 100. On January 28, 2009, a twelve-person jury found him guilty of Criminal Possession of a Weapon in the Second and Third Degrees, but acquitted him of Resisting Arrest. Opp. to Petition at ¶ 17; *see also* Petition at 1; Dkt. 10-2 ("Tr. I.2") at 89, 172-75. On March 16, 2009, Petitioner was sentenced to concurrent periods of incarceration of fifteen years and three and a half to seven

years on the two counts, respectively, plus five years post-release supervision. Petition at 1; Opp. to Petition at ¶ 17; Dkt. 10-3 ("Tr. I.3") at 15.

**Direct Appeal**

On February 23, 2010, Petitioner, through assigned counsel, appealed his conviction and sentence to the New York State Appellate Division, Second Department. *People v. McCall*, 914 N.Y.S.2d 291, 292 (2d Dep't 2011); *see also* Opp. to Petition at ¶ 18; Dkt. 11 ("Tr. II") at 1-72. Petitioner argued his conviction should be overturned because (1) there was no probable cause to search him at the time he was arrested, (2) the trial court erred in curtailing defense counsel's direct examination of two defense witnesses, (3) the trial court improperly admitted the tape of the 911 call into evidence, (4) he was denied his right to a fair trial when evidence from Gentile's arrest report was excluded, (5) jury venire was marred by racial discrimination (*i.e.* a *Batson* violation), and (6) numerous comments made by the prosecutor during summation were improper. *McCall*, 914 N.Y.S.2d at 292-93; *see also* Tr. II at 1-72. The Second Department rejected all of Petitioner's arguments, finding: (1) probable cause existed to search Petitioner, (2) the curtailment of defense counsel's questioning was not improper because the probative value of the witnesses' testimony was substantially outweighed by the danger it would unfairly prejudice the prosecution or mislead the jury, (3) the 911 tape was properly admitted under the present sense impression exception to the hearsay rule, (4) Petitioner was not deprived of a fair trial due to exclusion of Gentile's arrest report because Petitioner "had the opportunity to call the jury's attention to information it contained[,]" (5) Petitioner failed to make the prima facie showing of racial discrimination in jury selection, and (6) Petitioner failed to preserve for review his challenges to some of the prosecutor's summation because he failed to object at the

3

summation, and the other comments made by the prosecutor were "either responsive to the arguments and issues raised by defense counsel, or fair comment on the evidence." *Id.*

On January 27, 2011, Petitioner sought further review of his conviction from the New York Court of Appeals. Opp. to Petition at ¶ 21; Dkt. 11-1 ("Tr. II.1") at 34-39. Petitioner's application was denied on May 13, 2011, without an opinion. *People v. McCall*, 16 N.Y.3d 897 (N.Y. 2011); *see also* Tr. II.1 at 47.

**Post-Conviction Motion**

On October 3, 2011, Petitioner, proceeding *pro se*, moved before Justice Aloise to vacate his judgment of conviction and set aside his sentence pursuant to N.Y. Crim. Proc. Law §§ 440.10 and 440.20. Opp. to Petition at ¶ 22; Tr. II.1 at 48-79. Petitioner argued he received ineffective assistance of counsel because counsel: (1) failed to inform the prosecutor that Petitioner would accept the six-year plea deal; (2) failed to advise Petitioner to accept the plea offer; (3) failed to discuss Petitioner's maximum exposure; (4) failed to inform petitioner his sentence would include post-release supervision; and (5) failed to preserve the claim that a sentence with post-release supervision is unconstitutional. Opp. to Petition at ¶ 22; Tr. II.1 at 68-79. Petitioner also argued his sentence was illegal because it exceeded the statutory maximum permitted for Criminal Possession of a Weapon in the Second Degree. Opp. to Petition at ¶ 22; Tr. II.1 at 77-79.

On June 8, 2012, Petitioner's trial counsel filed an affirmation in which he stated: (1) he informed Petitioner numerous times during plea negotiations that the top charge meant Petitioner was facing a minimum of seven years and a maximum of fifteen years of incarceration; (2) he engaged in extensive plea negotiations with the prosecutor; (3) he explained to Petitioner that the six-year offer was a good offer especially given that, if convicted, Petitioner would likely be

sentenced to fifteen years or close to it; (4) Petitioner indicated he would never take an offer above five-years and that neither Petitioner nor Petitioner's family indicated he would accept the six-year offer; (5) if Petitioner had indicated an interest in the six-year deal, Defense Counsel would have informed the prosecutor; and (6) he informed Petitioner that once he was indicted, there would be no more plea offers. Opp. to Petition at ¶ 23; Dkt. 11-2 ("Tr. II.2") at 21-25.

On July 11, 2012, Justice Aloise denied Petitioner's motion on the merits. Opp. to Petition at ¶ 25; Tr. II.2 at 64-65. On the ineffective assistance of counsel claim, Justice Aloise found, because Petitioner's claim was supported solely by his own statements without any other evidence, there was no reasonable possibility that his allegations were true. Opp. to Petition at ¶ 25; Tr. II.2 at 64. Justice Aloise also rejected Petitioner's claim that his sentence was illegal. Opp. to Petition at ¶ 25; Tr. II.2 at 65.

On July 30, 2012, Petitioner, still proceeding *pro se*, moved the New York State Appellate Division, Second Department ("Second Department") for leave to appeal the July 11, 2012 Decision. Opp. to Petition at ¶ 26; Tr. II.2 at 66-100. On September 27, 2012, the Second Department denied petitioner's motion for leave to appeal. Opp. to Petition at ¶ 26; Dkt. 11-4 ("Tr. II.4") at 26.

### *Habeas Corpus* **Petition**

On December 28, 2012, Petitioner filed a petition for a writ of *habeas corpus* with this Court. Petition at 1. Petitioner alleges six bases for his petition for *habeas* relief: (1) violation of his Fourth Amendment right to be free from unreasonable search and seizure; (2) a *Batson* violation; (3) violation of his right to present a defense at trial; (4) violation of his right to confront witnesses against him; (5) violation of his due process right by the prosecutor during summation; and (6) violation of his right to effective assistance of counsel. *Id.* at 5, 7, 10, 12, 14,

17; Supp. at 1, 3, 6, 10, 15, 19. Respondent Superintendent Michael Capra ("Respondent"), the authorized person who has custody of Petitioner, argues the writ should not issue to Petitioner because: (1) Petitioner's Fourth Amendment claim is procedurally barred because he had a full and fair opportunity to litigate the issue at trial and on direct appeal; (2) the State Court's rejection of Petitioner's *Batson* claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent; (3) the State Court's decision that Petitioner was not denied the right to present a defense was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent; (4) the State Court's rejection of Petitioner's Confrontation Clause claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent; (5) the majority of Petitioner's claims about the prosecutor's summation are barred from review by an adequate and independent state ground, and the rest are neither contrary to, nor unreasonable applications of, clearly established Supreme Court precedent; and (6) the State Court's rejection of Petitioner's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Opp. to Petition at 17-70.

The Court will address each of the issues raised by Petitioner in turn.

## DISCUSSION

### I. Legal Standard

The Court's review of the Petition is governed by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. A federal habeas court may only consider whether a person is in custody pursuant to a state court judgment "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA requires federal courts to apply a "highly deferential standard" when conducting *habeas corpus* review of state court

decisions and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). For the reasons discussed below, the Court DENIES the Petition in its entirety.

## II. Analysis

Petitioner alleges six bases for his petition for *habeas* relief: (1) violation of his Fourth Amendment right to be free from unreasonable search and seizure; (2) a *Batson* violation; (3) violation of his right to present a defense at trial; (4) violation of his right to confront witnesses against him; (5) violation of his due process right by the prosecutor during summation; and (6) violation of his right to effective assistance of counsel. *Id.* at 5, 7, 10, 12, 14, 17; Supp. at 1, 3, 6, 10, 15, 19. The Court will address each of the issues raised by Petitioner in turn.

### A. Petitioner's Fourth Amendment Claim

Petitioner argues he is entitled to *habeas* relief because his arrest violated his Fourth Amendment rights as the NYPD officers did not have probable cause to arrest him. Petition at 5; Supp. at 1-3. Specifically, Petitioner argues the combination of an anonymous 911 call describing a man in a black hat and an NYPD officer observing Petitioner "adjusting the front of his waistband with his right hand" was insufficient to establish probable cause to arrest Petitioner. Petition at 5; Supp. at 1-3. Petitioner's argument is without merit.

Fourth Amendment *habeas* claims are governed by the standard set forth in *Stone v. Powell*, 428 U.S. 465, 494 (1976), which states that "'where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.'" *Parham v. Griffin*, 11-CV-477, 2015 WL 331860,

at *4 (E.D.N.Y. Jan. 22, 2015) (Kuntz, J.) (quoting *Stone v. Powell*, 428 U.S. at 494). There are two exceptions to the *Stone v. Powell* rule: (1) where the state provides no corrective process at all for Fourth Amendment violations, or (2) where the defendant was precluded from using a corrective process because there was an "unconscionable breakdown in the [State's] process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) and *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 70 (2d Cir. 1983)). Regarding the first exception, New York State's corrective process for evidence obtained through illegal search and seizure, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.*, has been found facially adequate by numerous federal courts. *See, e.g.*, *Allen v. Artus*, 09-CV-4562, 2014 WL 1918721, at *11 (E.D.N.Y. May 14, 2014) (Bianco, J.) (citing *Capellan*, 975 F.2d at 70 n.1 and *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) (Glasser, J.)). Therefore, Petitioner can only succeed in his *habeas* claim if there was an "unconscionable breakdown" in this process in Petitioner's case.

There is no such "unconscionable breakdown" on this record. Petitioner, represented by Defense Counsel, litigated this exact issue at a pre-trial suppression hearing. *See McCall*, 914 N.Y.S.2d at 292 (referencing suppression hearing). Further, he raised this issue on direct appeal to the Second Department and in his letter seeking leave to appeal to the New York Court of Appeals. *Id.* ("Contrary to [Petitioner's] contentions, at the time of his arrest, there was probable cause to believe that he was involved in a crime and, therefore, the hearing court properly declined to suppress a gun that the police recovered from him.") (citations omitted). Petitioner was provided the opportunity to, and did, take advantage of New York State's corrective process for evidence obtained through an illegal search and seizure.

Petitioner was provided with "an opportunity for full and fair litigation of [his] Fourth Amendment claim" as required by *Stone v. Powell*, 428 U.S. at 494. Therefore, his petition for *habeas* relief on this basis must be denied.

## B. Petitioner's *Batson* Claim

Petitioner next argues he is entitled to *habeas* relief because the prosecutor committed a *Batson* violation at his trial. Petition at 7; Supp. at 3-6. Specifically, Petitioner alleges the prosecutor engaged in racial discrimination during jury venire by using two of her five first round preemptory challenges to strike the only two African-American jurors seated that round, and that the third African-American person in the jury venire was never seated. Petition at 7; Supp. at 3, 5-6. This, according to Petitioner, is purposeful exclusion of African-American prospective jurors based on race, which violates *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986). Supp. at 3.

As with his Fourth Amendment claim, Petitioner raised his *Batson* claim on his direct appeal. When an issue raised in a petitioner's *habeas* petition has been litigated before the state court on appeal, a petitioner is entitled to *habeas corpus* relief only if he can show the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).

"For the purposes of federal habeas review, 'clearly established law' is defined as 'the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision.'" *Davis v. Racette*, 11-CV-5557, 2015 WL 1782558, at *3 (E.D.N.Y. Apr. 21, 2015) (Brodie, J.) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A state court decision is 'contrary to,' or an 'unreasonable application of,' clearly established law if the

decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a

conclusion different [from] that reached by the Supreme Court on 'materially indistinguishable'

facts; or (3) identifies the correct governing legal rule, but unreasonably applies it to the facts of

the petitioner's case." *Id.* (quoting *Williams*, 529 U.S. at 412-13 and citing *Harrington v.*

*Richter*, 562 U.S. 86, 99-100 (2011)). To establish that a state court's decision constitutes an

unreasonable application of the law, the state court decision must be "more than incorrect or

erroneous[,]" it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75

(2003). This means "a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *see also*

*Portalatin v. Graham*, 624 F.3d 69, 79 (2d Cir. 2010). "This distinction creates 'a substantially

higher threshold' for obtaining relief than *de novo* review." *Renico*, 559 U.S. at 773 (quoting

*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

When the issue of racial discrimination at jury venire is raised, *Batson v. Kentucky*, 476

U.S. 79 (1986), sets forth the relevant f legal principles. "In [*Batson*], the Supreme Court held

that the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on

account of their race." *Bowman v. Lee*, 10-CV-951, 2015 WL 1514378, at *1 (E.D.N.Y. Apr. 3,

2015) (Korman, J.) (internal quotation marks omitted). Courts evaluating a *Batson* challenge

follow a three-step inquiry:

> A *Batson* objection may be lodged when a party perceives a pattern of
> discrimination in the use of peremptory strikes during the voir dire, so-called
> "step one" or the "prima facie case" of a *Batson* challenge. Step two requires that,
> upon a showing of a pattern of discrimination, the opposing party provide race
> neutral reasons for its peremptory strikes. Finally, step three returns the ball to the
> challenger, who must then show that the professed race neutral reasons were
> pretextual and prove racial discrimination was the real motive.

*Richardson v. Greene*, 497 F.3d 212, 214 (2d Cir. 2007) (internal citations omitted). At every step of the process, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. 765, 768 (1995).

*Batson* "also describes the showing that must be made in order to establish a prima facie case of purposeful discrimination in [jury selection]: the movant must raise an inference that the prosecutor used preemptory challenges to exclude [potential jurors] on account of their race." *Truesdale v. Sabourin*, 427 F. Supp. 2d 451, 458 (S.D.N.Y. 2006) (Cote, J.) (internal quotation marks omitted). The burden in establishing this prima facie case is not a heavy one. "Instead, a [petitioner] satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Id.* at 459 (internal quotation marks and citation omitted). Further, as the Second Circuit has explained, "statistics, alone and without more, can, in appropriate circumstances, be sufficient to establish the requisite *prima facie* showing under *Batson*." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002) (citations omitted). "[W]hen deciding whether or not a party that brings a *Batson* challenge has made a *prima facie* showing, all relevant circumstances should be considered by the trial court." *Valdez-Cruz v. Racette*, 13-CV-3033, 2014 WL 3795577, at \*8 (E.D.N.Y. Aug. 1, 2014) (Bianco, J.) (citing *Batson*, 476 U.S. at 96).

Here, Petitioner challenges Justice Aloise's step-one determination that Petitioner failed to establish a prima facie case. Petitioner argues his Equal Protection rights were violated when the prosecutor used two of her five peremptory challenges during the first round of jury selection to exclude the only two African-American potential jurors then sitting in the jury box. Supp. at 3. At the venire, Defense Counsel challenged the prosecutor's strike of the first juror, an African-American woman, immediately after it was made stating "Judge, I believe on Batson I

11

can make an objection without a pattern[,]" and further explaining "I think she will be typically a person who the prosecution would favor." Dkt. 10 ("Tr. I") at 173. The trial judge responded "I'm not going to let you make a record." *Id.* After the prosecution had finished her five preemptory challenges in the first round, Defense Counsel renewed his *Batson* application, this time in regards to two of the five jurors struck. *Id.* at 173-74. Defense Counsel explained there were only three African-Americans in the venire panel, that the prosecutor had just struck two of them, and that both of the African American women struck seemed to be "good juror[s] for the People." *Id.* The trial judge denied Petitioner's *Batson* application "at this particular junction" on the basis that Petitioner had not satisfied the *prima facie* showing. *Id.* at 174. Petitioner never renewed his application.

In reviewing Justice Aloise's denial of Petitioner's appeal, the Second Department found "[Petitioner's *Batson* challenge was properly denied, as he failed to make the requisite showing of racial discrimination in the selection of the jury." *McCall*, 914 N.Y.S.2d at 292. The Second Department first stated the correct legal principle: "It is incumbent upon a party making a *Batson* challenge to articulate and develop all of the grounds supporting the claim, both factual and legal, during the colloquy in which the objection is raised and discussed." *Id.* (citations omitted). The Second Department then noted that "[i]n support of his *Batson* application, [Petitioner] noted only that the prosecutor used challenges against several prospective black jurors. In the absence of a record demonstrating other circumstances supporting a prima facie showing, the trial court correctly concluded that [Petitioner] failed to establish a pattern of purposeful exclusion sufficient to raise an inference of racial discrimination." *Id.* at 292-93 (citations omitted).

There is no basis on this record to conclude that these decisions were contrary to or an unreasonable application of clearly established Supreme Court precedent. As an initial matter, the Second Department correctly identified the governing law. Further, neither the trial court nor the Second Department engaged in an unreasonable application of the law. "While statistics alone may be sufficient to establish a *prima facie* case of discrimination in appropriate circumstances, [P]etitioner bears the burden of articulating and developing the factual and legal grounds supporting his *Batson* challenge before the trial court." *Copeland v. Walker*, 258 F. Supp. 2d 105, 123 (E.D.N.Y. 2003) (Korman, J.) (internal quotation marks omitted) (citing *Overton*, 295 F.3d at 278-80). Petitioner failed to "address or call to the attention of the trial judge crucial information surrounding the statistics, such as the total racial makeup of the venire, the number of minorities who actually sat on the jury, and the number of minorities who were not challenged by the prosecutor." *Id.* (internal citations omitted).

As an initial matter, Defense Counsel made his first challenge on the basis of *Batson* when only one African-American juror had been struck. This one data point alone, however, hardly seems a sufficient ground for a *Batson* violation. Defense Counsel then renewed his challenge when the second African-American juror was struck. Ultimately, Petitioner based his *Batson* challenge on the prosecutor striking two African-American jurors in the first round and the failure to seat the third African-American juror. He never mentioned the number of minorities who actually sat on the jury, or the number of minorities not challenged by the prosecutor, or any other surrounding information that would raise an inference of racial discrimination. In the absence of any supporting evidence to give meaning to these numbers, the mere fact that the prosecutor struck the two African American jurors sat in the first round is insufficient to establish an inference of discrimination. *See, e.g., id.* at 124.

Further, Defense Counsel's argument to Justice Aloise that the African-American jurors struck were jurors the prosecutor usually would have kept because they were employed does not constitute "crucial information surrounding the statistics." *Id.* "The absence of an obvious race-neutral reason for excluding a juror is not sufficient to establish a *prima* facie showing of racial motivation." *Cousin v. Bennett*, 511 F.3d 334, 339 n.1 (2d Cir. 2008) (citations omitted). "A party's valid reasons for exercising a peremptory challenge are often not apparent without explanation, and explanation is not required unless a *prima facie* showing of an improper motivation has been made." *Id.* Petitioner's argument that the prosecutor should have wanted to keep the two challenged jurors because they were employed is insufficient to meet his burden to make a *prima facie* case of discrimination.

On this record, Petitioner has not established that the determinations of Justice Aloise and the Second Department were contrary to, or an unreasonable application of, Supreme Court precedent. Therefore, Petitioner's request for *habeas* relief on this basis must be denied.

### C. Petitioner's Denial of His Right to Present a Defense Claim

Petitioner also argues his Due Process rights and right to a fair trial were violated because he was denied his right to present a defense. Petition at 10; Supp. at 6-9. Specifically, Petitioner argues his rights were violated when the trial judge precluded certain defense witnesses from testifying and precluded arrest reports that showing Gentiles possessed the same handgun Petitioned was charged with possessing. Supp. at 6.

As with Petitioner's *Batson* claim, Petitioner's claim of denial of his right to present a defense was litigated before the Second Department and therefore Petitioner is entitled to *habeas corpus* relief only if he can show the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). *See* II.B.,
*supra.*

A criminal defendant such as Petitioner "has a fundamental due process right to present a
defense." *United States v. Mi Sun Cho*, 713 F.3d 716, 721 (2d Cir. 2013) (citation omitted). The
right to present a defense, however, "is not absolute, for a defendant must comply with
established rules of procedure and evidence designed to assure both fairness and reliability." *Id.*
(internal quotation marks and citation omitted). This means "a defendant does not have an
unfettered right to offer testimony [or other evidence] that is inadmissible under the rules of
evidence." *Id.* (citations omitted). "[W]ell established rules of evidence permit trial judges to
exclude evidence if its probative value is outweighed by certain other factors such as unfair
prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. S. Carolina*, 547
U.S. 319, 326 (2006) (citing Fed. R. Evid. 403).

### 1. Kevin Cummings' Testimony

Petitioner first challenges the trial judge's exclusion of the testimony of Kevin
Cummings. Opp. to Petition at 37. Justice Aloise excluded the testimony of Kevin Cummings
because it was irrelevant and had the potential to both mislead and prejudice the jury. Tr. I.2 at
68. As Justice Aloise explained: "The fact of the matter that subsequent to the police arriving
and placing Gentiles under arrest and [Petitioner] under arrest whatever happened is that in my
opinion in this court[']s opinion is superfluous. It's irrelevant. And it's only designed to draw
sympathy from this jury as to what if any police conduct was whether it was excessive or not
excessive that is not for this jury to decide . . . It has nothing to do with the fact that this jury is
being asked to draw, whether or not [Petitioner] possessed a weapon." *Id.* Defense Counsel
conceded Mr. Cummings was not going to testify about whether Petitioner had a weapon, but

was only going to testify on the resisting arrest charge. *Id.* at 69-71. Petitioner was acquitted of

the resisting arrest charge. *Id.* at 172-75. Petitioner, therefore, did not need Mr. Cummings'

testimony to create a reasonable doubt about that charge. Thus, the exclusion of Mr. Cummings'

testimony did not violate Petitioner's right to present a defense. *See, e.g., Jones v. Stinson*, 229

F.3d 112, 120 (2d Cir. 2000) ("[W]hether the exclusion of witnesses' testimony violated

[Petitioner's] right to present a defense depends upon whether the omitted evidence evaluated in

the context of the entire record creates a reasonable doubt that did not otherwise exist.") (internal

quotation marks, brackets, and citations omitted). Further, the decision to exclude the testimony

with regards to the possession charges, and the Second Department's affirmation of the

exclusion, was not contrary to or an unreasonable application of Supreme Court precedent

because it was, concededly, irrelevant and would have been prejudicial. *See McCall*, 914

N.Y.S.2d at 292. Therefore, Petitioner's request for *habeas* relief because of the exclusion of

Mr. Cummings' testimony is denied.

### 2. Gentiles' Testimony

Petitioner next alleges that Justice Aloise improperly excluded the testimony of Gentiles,

the man who was arrested with Petitioner. Supp. at 8-9. Justice Aloise, however, permitted

Defense Counsel to call Gentiles as a witness. Tr. I.2 at 83 ("I am allowing you to call the

witness."). Justice Aloise limited Gentiles' testimony, after questioning him *in camera*, by

forbidding Defense Counsel to ask Gentiles any question about the gun because Gentiles had

indicated he would "take the Fifth." *Id.* at 80, 84. Defense Counsel subsequently decided not to

call Gentiles as a witness, and the defense rested. *Id.* at 85.

Petitioner's argument that he was denied a right to present a defense because Justice

Aloise excluded the testimony of Gentiles must fail because it is factually erroneous. Justice

16

Aloise expressly permitted Gentiles to testify, but Defense Counsel voluntarily decided not to call him as a witness. Further, while Petitioner vigorously contests Justice Aloise's questioning of Gentiles, the questioning was *in camera* and therefore did not affect the fairness of Petitioner's trial vis à vis the jury. Supp. at 8-9; Tr. I.2 at 79-83. Because Justice Aloise expressly permitted Defense Counsel to introduce Gentiles testimony, it was impossible for Justice Aloise or the Second Department to have acted contrary to or to have engaged in an unreasonable application of Supreme Court precedent. *See Holmes,* 547 U.S. at 326 (citing Fed. R. Evid. 403). Petitioner's request for *habeas* relief because of the exclusion of Gentiles' testimony is therefore denied.

### 3. Gentiles' Arrest Report

Petitioner last argues he was deprived of his right to present a defense because the trial court did not permit him to present Gentiles' arrest report as evidence. Supp. at 6. Justice Aloise did not allow Gentiles' arrest report into evidence because he determined the report would be prejudicial and irrelevant. Tr. I.1 at 94-99. On the prejudice point, Justice Aloise stated "[y]ou want the jury to infer that since [Gentiles] is on parole, he has a prior conviction he is more apt that he had the gun than you client is in your position." *Id.* at 95. On the irrelevance point, Justice Aloise was convinced the NYPD officers would testify that they arrested Gentiles for possession of the same weapon as Petitioner and therefore the arrest report was unnecessary. *Id.* at 97-99. The Second Department agreed with Justice Aloise on at least the second point, holding "[t]here is no merit to [Petitioner's] contention that he was deprived of his right to a fair trial by the trial court's determination to exclude from evidence another person's arrest report, since [Petitioner] had an opportunity to call the jury's attention to information it contained." *McCall*, 914 N.Y.S.2d at 292 (citation omitted). Subsequently, the detective who wrote

Gentiles' arrest report testified that Gentiles was charged with possession of the same weapon as Petitioner, the same weapon that was at issue at the trial. Tr. I.1 at 101. NYPD Lieutenant Gary Messina also testified that Gentiles was arrested for possession of the weapon at issue at trial. Tr. I.2 at 42-43. On the basis of this record, neither Justice Aloise nor the Second Department acted contrary to or engaged in an unreasonable application of Supreme Court precedent because Gentiles' arrest report would have been prejudicial if admitted and it was not relevant based on the detective's and the Lieutenant's unequivocal testimony. *See Holmes v. S. Carolina*, 547 U.S. at 326 (citing Fed. R. Evid. 403). Petitioner's request for *habeas* relief because of the exclusion of Gentiles' testimony is therefore denied.

### D. Petitioner's 911 Call Claim

Petitioner next argues his rights were violated by the admission of an anonymous 911 call at trial. Supp. at 10-15. Specifically, Plaintiff argues (1) the 911 call should not have been admitted because it did not meet the requirements of the present sense impression hearsay exception, and (2) admission of the call violated his rights under the Confrontation Clause of the Sixth Amendment. *Id.*

The Second Department expressly upheld Justice Aloise's admission of the 911 call into evidence under the present sense impression exception to the hearsay rule. *McCall*, 914 N.Y.S.2d. at 292. Even though the Second Department did not expressly state its holding was also determinative of Petitioner's Confrontation Clause claim, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 133 S.Ct. 1088, 1096 (2013). The Court therefore presumes that the Second Department adjudicated Petitioner's Confrontation Clause claim when it upheld the admission of the anonymous 911 call under the

present sense impression exception to the hearsay rule. Accordingly, because Petitioner's

hearsay and Confrontation Clause claims were litigated before and adjudicated by the Second

Department, Petitioner is entitled to *habeas corpus* relief only if he can show the state court

adjudication "resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"

28 U.S.C. § 2254(d)(1). *See* II.B., *supra*. The Court will address each issue in turn.

### 1. Petitioner's Hearsay Claim

Petitioner first argues the 911 call should not have been admitted under the present sense

impression exception to the hearsay rule. Supp. at 10-12. To constitute an error of constitutional

magnitude sufficient for *habeas* relief, "erroneously admitted evidence must have been

sufficiently material to provide the basis for conviction or to remove a reasonable doubt that

would have existed on the record without it." *Osbourne v. Heath*, 12-CV-1138, 2015 WL

1548947, at *13 (E.D.N.Y. Apr. 8, 2015) (Bianco, J.) (internal quotation marks omitted) (citing

*Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992)). This analysis proceeds in two steps. First,

the *habeas* court must determine "whether the trial court's evidentiary ruling was erroneous

under New York law[.]" *Id.* Second, if the ruling was erroneous under New York law, then the

*habeas* court must evaluate "whether the error amounted to the denial of the constitutional right

to a fundamentally fair trial." *Id.* (citing *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001)).

Justice Aloise's decision to admit the 911 call was not erroneous under New York law

because the anonymous 911 call was made while the caller was observing someone in possession

of a weapon. The Second Department confirmed Justice Aloise's decision by finding "the trial

court properly admitted into evidence the audiotape of a telephone call to the 911 emergency

number under the present sense impression exception to the hearsay rule, as the caller's

comments indicated that he was observing the subject crimes as they occurred." *McCall*, 914 N.Y.S.2d. at 292 (citations omitted). The state court rulings are consistent with well-established New York precedent. *See id.* (citing three New York cases); *see also Osbourne*, 2015 WL 1548947 at *13. Petitioner's arguments to the contrary are unavailing. The Court therefore concludes the 911 call was not erroneously admitted under New York law. As the trial court's ruling was not erroneous, the Court need not proceed to the second step of the analysis. Petitioner's request for *habeas* relief on this basis is denied.

### 2. Petitioner's Confrontation Clause Claims

Petitioner also argues the 911 call should not have been admitted into evidence because it violated his rights under the Confrontation Clause. Supp. at 12-15. Petitioner's argument is without merit because the Confrontation Clause only applies to testimonial evidence.

"The Confrontation Clause of the Sixth Amendment, which applies to the states through the Fourteenth Amendment, guarantees the defendant in a criminal prosecution the right to confront witnesses against him." *Henry v. Speckard*, 22 F.3d 1209, 1214 (2d Cir. 1994) (citation omitted). "Thus, the Confrontation Clause prohibits the prosecution from introducing 'testimonial' statements by a non-testifying declarant unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant." *Osbourne*, 2015 WL 1548947 at *13 (citing *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004) and *Davis v. Washington*, 547 U.S. 813, 821 (2006)).

The Supreme Court in *Davis v. Washington*, however, found that a 911 call was nontestimonial because the person on the call was "speaking about events *as they were actually happening*, rather than describing past events," and any questions asked were asked in order to "*resolve* the present emergency, rather than simply to learn . . . what happened in the past."

*Davis v. Washington*, 547 U.S. at 827 (internal quotation marks and citation omitted) (emphasis in original).

On this record, it is not possible to conclude that the determinations of the trial judge and the Second Department were contrary to, or an unreasonable application of, Supreme Court precedent. Here, the 911 call and any questions asked during the call were made to resolve the ongoing emergency of an armed individual on the public street. Therefore, under *Davis v. Washington*, the 911 call is nontestimonial. As such, admitting the 911 call into evidence could not have violated Petitioner's rights under the Confrontation Clause. Petitioner's request for *habeas* relief on this basis must be denied.

### E. Petitioner's Due Process Claim

Petitioner further claims that his Due Process rights were violated in numerous ways by the prosecutor during her summation. Petition at 14; Supp. at 15-19. Specifically, Petitioner identifies the following violations of his Due Process rights: (1) the prosecutor "pitted the credibility of [Defense] Counsel against the testimony of the prior Assistant District Attorney on the case and made herself an unsworn witness as to evidentiary matters"; (2) the prosecutor's "inflammatory comments and personal attacks during summation deprived Petitioner of a fair trial"; and (3) the prosecutor "shifted the burden onto the Defense." Supp. at 15-16. Respondent argues that some of Petitioner's claims are procedurally barred and that the rest are not contrary to, or an unreasonable application of, Supreme Court precedent. Opp. to Petition at 45-59. The Court will address first those comments alleged to be procedurally barred before turning to those that are alleged to be not contrary to, or an unreasonable application of, Supreme Court precedent.

### 1. Some of Petitioner's Claims are Procedurally Barred

On appeal, the Second Department found that a number of Petitioner's claims regarding statements and actions by the prosecutor at trial had not been preserved for appellate review. *McCall*, 914 N.Y.S.2d at 293. Specifically, the Second Department identified the following claims as not having been preserved: (1) Petitioner's "contention that the prosecutor's comments during summation regarding the testimony of an assistant district attorney who represented the People during the suppression hearing were improper"; (2) Petitioner's "challenge to the prosecutor's comments during summation that the jury should 'get the big gun off the street' and tell [Petitioner] that it did 'not think that it's okay for him to just carry the gun in Queens County'"; (3) Petitioner's "challenge to the propriety of the prosecutor's statement, during summation, that [Petitioner's] arrest was not 'a big tadoo [sic]'"; and (4) Petitioner's "challenge to the propriety of the prosecutor's comments regarding the lack of evidence of use of excessive force by the police[.]" *Id.*

Under the Adequate and Independent State Ground doctrine, "the Supreme Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Davis v. Racette*, 2015 WL 1782558 at *7 n.3 (internal quotation marks omitted) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "In the context of federal habeas review, if a state prisoner's federal challenge was not addressed in state court because the prisoner failed to meet a state procedural requirement, federal habeas review is barred." *Id.* (citing *Coleman*, 501 U.S. at 730). "Once it is determined that a claim is procedurally barred under state rules, a federal court still may review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can

demonstrate the failure to consider the claim will result in a miscarriage of justice." *Osbourne*, 2015 WL 1548947 at *8 (citing *Coleman*, 501 U.S. at 750). "A miscarriage of justice is demonstrated [only] in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent." *Id.* (citation omitted).

Under New York law, a claim of prosecutorial misconduct during summation must be preserved for appellate review by a specific objection made at trial. *See People v. Tonge*, 710 N.E.2d 653, 653 (N.Y. 1999) (citations omitted). "[A] party's failure to specify the basis for a general objection renders the argument unpreserved for [the New York state appellate court's] review." *Id.* (citations omitted). "The word 'objection' alone [is] insufficient to preserve the issue for [appellate] review" in the New York state courts. *People v. Tevaha*, 644 N.E.2d 1342, 1342 (N.Y. 1994). Here, Defense Counsel failed to object to the prosecutor's statements about the assistant district attorney, failed to object to certain statements about the gun at issue, and failed to object to prosecutor's description of Petitioner's arrest. *See* Tr. I.2 at 137-38, 146-47, 151-52. Moreover, on numerous occasions, Defense Counsel did no more than simply state "objection" without any further specificity. Tr. I.2 at 123024, 132, 141, 144-45. Additionally, because Defense Counsel's objections to the prosecutor's comments about the use of force were sustained, there can be no appeal since the Petitioner won the issue. Tr. I.2 at 142-43. Accordingly, the Second Department did not err in determining these claims were procedurally barred as unpreserved for appellate review. Further, this procedural bar, which only applies in New York, constitutes an adequate and independent state law ground for the decision. Thus, there can be no federal *habeas* review unless Petitioner demonstrates cause and prejudice or a miscarriage of justice. *See Osbourne*, 2015 WL 1548947 at *8 (citing *Coleman*, 501 U.S. at 750).

Petitioner has alleged neither cause, nor prejudice, nor a miscarriage of justice in his

*habeas* petition. Petitioner does not argue that he should be excused for failure to make this

claim or otherwise demonstrate cause for his procedural default. Further, even reading the

petition liberally, Petitioner has neither demonstrated prejudice nor that a fundamental

miscarriage of justice will result if these claims are not reviewed by the federal court.

Petitioner's claim is therefore without merit. Accordingly, the petition for habeas relief on this

basis is denied.

### 2. The Rest of Petitioner's Due Process Claims

While certain of Petitioner's allegations of violations of due process by the prosecutor are

procedurally barred, others were addressed on the merits by the Second Department. *See*

*McCall*, 914 N.Y.S.2d at 293. Specifically, the Second Department held "[Petitioner's]

contentions that numerous other comments the prosecution made during summation deprived

him of a fair trial are without merit, as the challenged remarks were either responsive to the

arguments and issues raised by defense counsel, or fair comment on the evidence." *Id.* (citing

*People v. Montalvo*, 825 N.Y.S.2d 101, 102 (2d Dep't 2006)). A review of the record indicates

that the Second Department adjudicated Petitioner's claims vis à vis the prosecutor's reference to

a voucher for Petitioner's "CRIMSON" jacket that was never entered into evidence and the

prosecutor's reference to Defense Counsel's actions as "shenanigans [sic]" on the merits. *See* Tr.

I.2 at 134, 135-36. Petitioner, therefore, is entitled to *habeas corpus* relief only if he can show

the state court adjudication "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States[.]" 28 U.S.C. § 2254(d)(1). *See* II.B., *supra*.

The relevant federal law on the issue of when prosecutorial misconduct amounts to the denial of a criminal defendant's due process rights is set forth in *Darden v. Wainwright*, 477 U.S. 168 (1986), *United States v. Young*, 470 U.S. 1 (1985), and *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). "[A] claim of prosecutorial misconduct requires a court to consider whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Covington v. Warden, Five Points Corr. Facility*, 11-CV-8761, 2014 WL 7234820, at *13 (S.D.N.Y. Dec. 8, 2014) (Mass, Mag. J.) (internal quotation marks omitted) (citing *Darden*, 477 U.S. at 181). A finding that the comments were "undesirable or even universally condemned" is not enough. *Darden*, 477 U.S. at 181. Similarly, "a mere showing of prosecutorial misconduct does not necessarily entitle a petitioner to habeas relief." *Covington*, 2014 WL 7234820 at *13 (citing *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). "Instead the petitioner must show that he suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (internal quotation marks omitted) (citing *Bentley*, 41 F.3d at 824). Further, "a habeas court must determine whether any of the allegedly improper comments were minor aberrations in a prolonged trial as opposed to cumulative evidence of a proceeding dominated by passion and prejudice." *Stewart v. Lee*, 09-CV-4374, 2014 WL 3014608, at *5 (E.D.N.Y. July 3, 2014) (Vitaliano, J.) (internal quotation marks and citations omitted). As a result of this high standard, "a [petitioner] asserting that a prosecutor's remarks warrant a new trial faces a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of his right to a fair trial." *Id.* (internal quotation marks and citation omitted).

Petitioner has failed to meet this heavy burden here. Regarding the voucher issue, the prosecutor raised the voucher in her summation only after Defense Counsel had made a point of

prosecutor's failure to produce the voucher for Petitioner's "CRIMSON" jacket in his summation. *Compare* Tr. I.2 at 109-10, 113 *to id.* at 134. As background, Petitioner's "CRIMSON" jacket went missing at some point between the suppression hearing and trial, although Defense Counsel was able to view the jacket at the suppression hearing. Tr. I.1 at 177-82, 184-85. The prosecutor had a voucher for the missing jacket with Petitioner's name on it, but she was unable to get the voucher admitted as evidence at trial. *See, e.g.*, Tr. I.2 at 109-10. Defense Counsel argued in his summation that no such voucher existed, while knowing that a voucher did exist but was unable to be entered into evidence. Tr. I.2 at 109-13. "[I]mproper comments are considered less egregious if they were made in response to defense contentions." *Stewart*, 2014 WL 3014608 at *5 (citing *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1982)). Given Defense Counsel's raising of the issue of the voucher, knowing that the prosecutor could not have entered it into evidence, prosecutor's response to it was not egregious and did not amount to a denial of Petitioner's due process rights. Accordingly, the Second Department's denial of Petitioner's due process claim regarding the prosecutor's comments about the voucher was not contrary to or an unreasonable application of federal law. Petitioner's application for *habeas* relief on this ground is denied.

On the "shenanigans" issue, the prosecutor initially referred to Defense Counsel's actions during trial as "shenanigans [sic]." *Id.* at 136. After a brief back and forth between Justice Aloise and Defense Counsel, the prosecutor modified her language and explained to the jury that "[Defense Counsel] is trying to zealously advocate for his client. That's fine. . . . So you see things that sometimes get heated. He is doing his job for his client at the same time you have to use your common sense." *Id.* It is settled law that "[i]n the particular context of a challenged summation, [a] habeas petitioner must show not simply that the particular summation comment

was improper, but that the comment, viewed as against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him." *Stewart*, 2014 WL 3014608 at \*5 (internal quotation marks omitted) (citing *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012)). Given the prosecutor's change in tone and explanation of what she had meant, as well as in the context of the rest of the summation and trial, Petitioner cannot show that his due process rights were violated. Accordingly, the Second Department's denial of Petitioner's due process claim regarding the "shenanigans" comment was not contrary to or an unreasonable application of federal law. Petitioner's application for *habeas* relief on this ground is also denied.

## F. Petitioner's Ineffective Assistance of Counsel Claim

Petitioner last argues that he received ineffective assistance of counsel. Petition at 17; Supp. at 19-20. Specifically, Petitioner argues that Defense Counsel was ineffective because (1) Defense Counsel failed to advise Petitioner that Petitioner should take the six-year plea offer; (2) Defense Counsel failed to object to Petitioner's sentence of five-years post release supervision; and (3) Defense Counsel failed to argue Petitioner's sentence was "unconstitutionally vague, arbitrary and capricious, discriminatory and [a] violat[ion of] Petitioner's Eight[h] Amendment rights, i.e., cruel and unusual punishment." Petition at 17; Supp. at 20.

On July 11, 2012, Justice Aloise denied Petitioner's ineffective assistance of counsel claims on the merits. Tr. II.2 at 64-65. On the plea offer argument, Justice Aloise found Petitioner's claim was "supported solely by the [Petitioner's] affidavit and is unsupported by any other evidence, and there is no reasonable possibility that the [Petitioner's] allegations are true." *Id.* at 64. On the sentencing arguments, Justice Aloise held "[Petitioner's] motion papers fail to allege any ground constituting a legal basis to set aside his sentence." *Id.* at 65. Justice Aloise

therefore denied Petitioner's motion on the merits. Petitioner, accordingly, is entitled to *habeas corpus* relief only if he can show the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). *See* II.B., *supra*.

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the relevant federal law governing ineffective assistance of counsel claims. In reviewing a state court's application of the *Strickland* standard, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States [D]istrict [C]ourt." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

"Under *Strickland*, in order to prevail on an ineffective-assistance-of-counsel claim, a defendant must meet a two-pronged test: (1) he 'must show that counsel's performance was deficient' . . . and (2) he must show that 'the deficient performance prejudiced the defense[.]'" *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Strickland,* 466 U.S. at 687, 690). "It is the accused's 'heavy burden' to demonstrate a constitutional violation under *Strickland*." *Moreno v. Smith*, 06-CV-4602, 2010 WL 2975762, at *15 (E.D.N.Y. July 26, 2010) (Matsumoto, J.) (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)).

Under the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citations omitted).

Under the second prong, to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

On the plea offer issue, Justice Aloise's determination was not contrary to or an unreasonable application of the *Strickland* standard. Justice Aloise found Petitioner had failed to allege ineffective assistance of counsel because Petitioner had failed to substantiate his allegations. Tr. II.2 at 64. A petitioner can show ineffective assistance of counsel during plea negotiations "by producing both a sworn affidavit or testimony stating that he would have accepted or rejected a plea agreement but for his counsel's deficient performance and also some additional 'objective evidence' supporting his claim." *United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (quoting *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998)). Here, Petitioner has failed to produce any evidence supporting his conclusory and self-serving contention that he would have accepted the six-year offer had he received competent advice, especially considering his concession that he continued to push for a five-year deal. Petition at 17; Supp. at 20; *see e.g.*, *Paredes-Cordova v. United States* 14-CV-1764, 2015 WL 1063048, at *5 (S.D.N.Y. Mar. 9, 2015) (Batts, J.) (finding Petitioner failed to assert an ineffective assistance of counsel when he provided only a "conclusory and self-serving contention" without evidentiary support). Accordingly, Justice Aloise's denial of Petitioner's ineffective assistance of counsel

claim regarding the plea offer was not contrary to or an unreasonable application of the *Strickland* standard. Therefore, Petitioner's application for habeas relief on this ground must be denied.

Similarly, Justice Aloise's determination regarding Petitioner's claim for ineffective assistance of counsel on the basis of his sentence was also not contrary to or an unreasonable application of the *Strickland* standard. Justice Aloise found Petitioner had failed to allege ineffective assistance of counsel because there was no legal basis for the argument that Petitioner alleged Defense Counsel was deficient for failing to have made. Tr. II.2 at 65. It is well settled that "the failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner [i]s entitled." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001); *see, e.g.*, *Hicks v. Ercole*, 09-CV-2531, 2015 WL 1266800, at *23 (S.D.N.Y. Mar. 18, 2015) (Nathan, J.) ("The failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance.") (citing *United States v. Reqalado*, 518 F.3d 143, 150 n.3 (2d Cir. 2008)); *Johnson v. Rivera*, 07-CV-334, 2010 WL 1257923, at *9 (N.D.N.Y. Mar. 25, 2010) (McAvoy, J.) ("[C]ounsel [does] not render ineffective assistance by failing to make [an objection that would have been overruled as baseless].") (citing *United States v. DiPaolo*, 804 F.2d 225, 234 (2d Cir. 1986)).

Here, Petitioner was found guilty of Criminal Possession of a Weapon in the Second Degree. Tr. I.2 at 172-75. This is a violent felony offense under N.Y. Penal Law § 70.02(1)(b). N.Y. Penal Law § 70.02(1)(b) (listing criminal possession of a weapon in the second degree as a Class C violent felony offense). Petitioner was found to be a second violent felony offender, and Petitioner did not challenge this determination at sentencing. Tr. I.3 at 4. Pursuant to N.Y. Penal Law §70.04, Petitioner thus faced a maximum of fifteen years for the second degree weapon

possession conviction, and therefore his fifteen year sentence was authorized by law. *See* N.Y. Penal Law §70.04(3)(b) ("For a class C felony, the term must be at least seven years and must not exceed fifteen years[.]"). Further, Justice Aloise was required to impose a five year period of post-release supervision. *See* N.Y. Penal Law §70.45(2) (setting period of post release supervision for a determinate sentence as five years). As a result, Defense Counsel had no basis on which to object to the imposed sentence. Accordingly, Justice Aloise's denial of Petitioner's ineffective assistance of counsel claim regarding the post-release sentence was not contrary to or an unreasonable application of federal law. Therefore, Petitioner's application for habeas relief on this ground must be denied.

Further, because Petitioner's sentence is within the limits of a valid state statute, his sentence does not violate the Eighth Amendment prohibition on cruel and unusual punishment. *See Webb v. LaClair*, 10-CV-7603, 2014 WL 4953559, at *9 (S.D.N.Y. Sept. 30, 2014) (Gardephe, J.). "'No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.'" *Id.* at *9 (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)). Accordingly, Justice Aloise's denial of Petitioner's ineffective assistance of counsel claim regarding the constitutionality of his sentence was not contrary to or an unreasonable application of federal law. Therefore, Petitioner's request for habeas relief on the grounds that his sentence violated the Constitution is denied.

### CONCLUSION

For the reasons stated herein, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253. The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 29, 2015
Brooklyn, New York